Moncure, P.
delivered the opinion of the court.
This is a supersedeas to a judgment of the court of the corporation of the city of Rorfolk, rendered on the 14th day of January, 1869, on a motion on a bond for the forthcoming of property distrained for rent, claimed by the plaintiff, Rebecca B. Tunis, to be due to her by her tenants, C. "W. Grandy & Sons, for a certain messuage and tenement situated in the said city. It'was agreed between the parties that the defendants might, in making their defence to saicl motion, give in evidence, without any pleading filed by them, any matter which could be given in evidence under any special plea in bar good in law; and that the plaintiff might give in evidence, by way of rebuttal, any matter which could be given in evidence under any replication that might be made to such special plea in bar as aforesaid. And thereupon the said parties, by consent entered of record, waived their right to have a jury, and submitted that the whole matter of law and fact might be heard and determined, and judgment given by the court. The trial was very protracted, having commenced on the 29th of December, 1868, and ended on the 14th of January, 1869, when judgment was rendered for the defendants. The plaintiff excepted to the judgment of the court, and filed a bill of exceptions, which was made a part of the record, and in which is set out all the evidence in the case. The claim was for $1,143.75, being rent for three-quarters of the year 1868. The defence of the tenants was, that they were evicted by the lessor of a portion of the demised premises, and were, therefore, discharged from their obligation to pay *112 the rent, or any part of it. The said portion of which they claimed to have been evicted was a part of a wharf, which they insisted was appurtenant to, and parcel of, the demised premises ; and the eviction consisted in the use and occupation of the said part of the wharf by Murdock Howell, claiming to be entitled to such use and occupation under a lease from the plaintiff", prior in time to that under which the defendants claimed. The question in controversy depends almost entirely, if not entirely, on the true construction of these two leases.
On the trial of the cause, the plaintiff introduced as evidence :
Firstly, The warrant of distress and the return thereon.
Secondly, The forthcoming bond taken under the said warrant, with the indorsement thereon.
Thirdly, The deed of lease from the plaintiff to C. W. Grandy & Sons, bearing date the 25th day of September 1867. As this is a most important part of the evidence in the case, it is proper to set out the same substantially. It states that the said Eebecca B. Tunis, in consideration of the rents, provisions, and agreements thereinafter mentioned, had rented to the said Grandy & Sons, the warehouse situated on Tunis’s wharf, in the city of Horfolk, formerly occupied by William Swain, together with the appurtenances thereto belonging, to-have and to hold the said warehouse and appurtenances, for the year 1868, commencing January 1st, and ending December 31st, 1868, inclusive, for the sum of-$1,525, payable in quarterly instalments, the first to be paid on the 1st day of April 1868, and the others at the end of each quarter as they might become due, except in case of destruction of said property by fire, or unavoidable accident, in which event the rent was to cease. And in default of the payment of said rents as before appointed, it was agreed that the said E. B. Tunis, at the end of the quarter at which such failure of the payment of the rent might occur, after giving ten days’ notice in writing *113 to the said Grandy & Sons, might take possession of the said warehouse and appurtenances, and re-rent the same for the. unexpired term ; and that the said Grandy & Sons would pay to her all costs and damages which she might sustain on account of the failure of the payment of the rent as before specified. The deed then proceeded in the following words;
“It is farther agreed and understood between the parties to this indenture, that the property herein rented does not include the lumber yard or the brick office, but only includes the warehouse and old wood shed, now standing in rear of the warehouse, on a line with the street, and which the said C. W. Grandy & Sons wish to use as a stable, or whatever else they may see fit. The said 0. "W. Grandy & Sons are to have the entire privilege and control of the entire wharf to said warehouse and lumber yard, which wharf runs from lumber yard now occupied by Santos & Brother, to warehouse now occupied by C. "W. Grandy & Sons, except that the party or parties who may occupy lumber yard and sheds shall have permission to use the wharf in front of lumber yard in carrying on their business, in landing and loading with lumber, &c., but on no account shall the party or parties occupying lumber yard and sheds be allowed to let anything whatever remain on the wharf, but it is to be taken away as soon as put upon it, otherwise C. 'W. Grandy & Sons will charge the usual wharfage on all such merchandise, lumber, &c.
Fourthly, The deed of lease from the plaintiff to Murdock Howell, bearing date the 1st day of December 1865. By that deed, she rented to the said Howell “the lumber yard, with the office, lime shed and wooden sheds thereto attached, which yard is adjoining the warehouse on Tunis’s wharf, generally called the Kader Biggs warehouse, together with the use of the wharf in front of the said lumber yard, for the purposes required for his on the lumber business, &c., (but the *114 said Murdock Howell is not to have the privilege of collecting wharfage, either on vessels or goods, landing or shipping for other parties), for the term of one year, beginning the first day of January 1866, for the sum of $600 per annum, payable quarterly; and the said Rebecca B. Tunis consents that the said Murdock Howell shall have the privilege of renting the said property yearly for four additional years, from the 1st day of January 1867, at an annual rent of $700, subject in all respects to the conditions above described.” ■ Other agreements ar.e contained in this lease, but it is not material to state them.
Fifthly, A diagram of the property embraced by these leases respectively, which is marked “ H,” and is as follows:

*115 The defendants then introduced 0. W. Grandy, Jr., ■as a witness, who testified, in substance, that he was a member of the firm of C. W. Grandy & Sons, who were, at the making of the lease by the plaintiff, dealers in grain, cotton, lumber, and naval stores, but chiefly in shingles and pine lumber; that the principal object of said firm in leasing from the plaintiff' the premises mentioned in the lease, was to get the use of the wharf therein mentioned, their business being such as to require the constant and indispensable use of a wharf; that the said firm entered into possession of the warehouse and the wharf in front thereof, under the plaintiff", on the 1st day of January 1868 ; that they were never in possession of that part of the wharf in front of the lumber yard leased by the plaintiff to M. Howell, or had the use and enjoyment of the same; that the said firm had use for a wharf in their business, much more than they had for a warehouse ; that their business was impaired, and their revenue diminished by not having the use of the wharf in front of the lumber yard leased to Howell; that the wharfage which they would have received from the wharf, if they could have used the whole of it according to the lease to them, would have about paid the rent to the plaintiff reserved by said lease for the whole property therein named ; that when they rented from the plaintiff, they did not know of the-provisions of the lease to M. Howell; that the whole wharf front was about one hundred and twenty feet; that the said firm used about one-third, and Howell the balance, or about two-thirds of said wharf; that at the time the said firm moved into the warehouse under the lease to them, the said Howell had shingles upon that part of the wharf in front of his said lumber yard, and some bricks in the bin, which was also in front of said lumber yard, some of which bricks have remained there till the present time; that the said Howell so used and occupied that part of the said wharf in front of the said lumber yard, that the said Grandy & *116 Sons could not, and did not, use it during the year 1868 that the said bin containing bricks occupied fourteen or fifteen feet of the wharf in front of said lumber yard; that said firm demanded wharfage of Howell in April 1868, which he refused to pay, and claimed the right to-use the wharf as he did, under his lease from the plaintiff ; that said witness then went to the house of the-plaintiff, to see her about not being able to use that part of the wharf occupied by Howell, but did not get an interview with her that in consequence of not being able to use that part of the wharf in front of Howell’s lumberyard, Grandy & Sons were obliged to rent another wharf, and now have two cargoes of shingles stored on the latter, all of which could have been stored on the wharf rented to them by the plaintiff, if they could have used the whole of it; that lumber yards generally require the use of a wharf, and that Howell sometimes occupied that part of the wharf in front of his lumber yard, so that a person could scarcely walk on the wharf. The witness-then exhibited a paper stating the rates of wharfagecharged in the city, which need not be set out here; and further testified that the said 0. 'W. Grandy & Sons occupied, during the year 1867, the premises immediately adjoining, on the west, those leased from the plaintiff; that they never made any complaint to the plaintiff of Howell’s use of the wharf "until after the 1st of April 1868 ; and that they had, during the whole of the year 1868, the uninterrupted use of all that portion of the-wharf lying west of the lumber yard leased to Howell, as-shown by the diagram.
The defendants then introduced G. H. Drummond as-a witness, who testified that he had been in the employment of 0. W. Grandy & Sons for the last two years; that they were never in possession of that part of the-wharf in front of Howell’s lumber yard, which was occupied by lumber and bricks when C. ~W. Grandy & Sons moved into the warehouse, about January 1st, 1868¿ *117 and that he collected wharfage four times prior to April of that year, from vessels not belonging to or employed by Howell, but upon that portion of the wharf claimed by him, not exceeding $25 in amount.
The defendants then introduced M. Howell as a witness, who testified- that he was lessee of the premises mentioned in the deed of lease from the plaintiff to him as aforesaid; that he used and occupied the said premises as required for the purpose of carrying on his lumber business, &c.; that he used the whole of the said wharf in front of his lumber yard for his said business, in the aggregate, about one month; that though he did not use the whole of said wharf, in the aggregate, more than one-twelfth of the year, he had parts of said wharf in front of said lumber yard in use all the time, sometimes using one part and sometimes another; that the purposes of his said business required him so to use it, and that he did so use it, as to make it impracticable for Grandy & Sons to use it in their business much of the time; that they could have occupied parts of said wharf in front of said lumber yard, when not used by him; but he had his lumber, shingles, &c., so scattered as much to interfere with and prevent its use by Grandy & Sons in their business, and that it would be almost useless to them; that his use of said wharf was a necessity to his business; that he could have put bricks and other merchandise in the lumber yard, but it would have caused considerable additional expense; that lumber could not be removed from the said wharf as fast as it was put there; that it could not be moved till inspected; that it often took two or three days to get it inspected, and sometimes several days more to have it hauled off the wharf; that he occupied the wharf only in his business ; that when he was receiving heavy articles to be reshipped immediately, he could not haul them away without much inconvenience; that he had lumber, &c., landed and kept on that part of the said wharf in front *118 of his lumber yard during the whole of the year 1868, sometimes in large and sometimes in small quantities; that a paper, which was exhibited by the witness, and is part of the record, but need not be set out here, contained a statement of all the lumber and bricks landed on the said wharf for the witness, which would have been chargeable with wharfage, if 'he was chargeable therewith, and if it had remained on the wharf for a-period of twenty-four hours; the wharfage would have been about $161, at the usual rates.
The said witness also testified, on cross-examination, that he had abundant room in his lumber yard for all the merchandise received by him, if he had chosen to store it there, but that such storage in the yard would have been expensive and inconvenient to him; and, therefore, he considered the use of the wharf, as he did use it, necessary to his business; that he, Howell, did not know that the defendants ever suffered, in any respect, by his occupation of the wharf, and that they could have occupied it when he did not; that the bin referred to was put up by Swaine, the tenant of the warehouse for the' year 1867, prior to its occupation by Grandy & Sons; and that the distance across the wharf from the lumber yard gate to the water is about thirty feet.
The plaintiff' then introduced H. M. Bowden, who testified that G. W. Grandy & Sons took possession of the property leased to them as aforesaid on the 1st day of January 1868, or a day or two anterior thereto, as successors of the said Swaine, at which time there ,was no obstruction or storage of merchandise of any kind upon any part of the whai’f in question, except the bin refei’red to, constructed of plank, about twelve or fourteen feet square, containing bricks, and situated at the extreme eastern end of the wharf, as shown by the said diagram; that the extreme length of the wharf is one hundred and thirty-one feet, that portion of it in front of the warehouse being sixty-one feet, and that in front *119 of the lumber yard seventy feet; that the said O. "W. Grandy & Sons never made any complaint, or gave information of their not having been put in possession of' the whole property leased to them, or of being obstructed in the use of any part of it, by Howell, or any other person, until sometime after the 1st of April 1868; and that they had made no effort either to collect wharfage from Howell, or to dispossess him of the right of storage on the wharf, as claimed by him.
The plaintiff then moved the court to allow her to introduce testimony to prove—
1st, That the term “use of the wharf in front of the said lumber yard for the purpose of carrying on the lumber business,” as employed in her lease to Howell, was intended and understood by the parties to give the lessee the right only of, shipping his produce from the wharf, and receiving it at the wharf, and not the right of storing anything thereon; and that, by the custom of the merchants of the city, such is the only manner in which wharves thus situated are ever used.
2d, That the last clause in the lease to Grandy & Sons, by which it is stipulated, that if the tenant of the lumber yard, or others, should allow his or their merchandise to remain on the wharf, Grandy & Sons should charge the usual wharfage on such merchandise, was designed and understood by both parties to give Grandy & Sons the privilege of charging such wharfage, as against the parties thus leaving the merchandise on the wharf, and of looking to them only therefor, and not to the plaintiff; and that such privilege was agreed upon by the parties as the only remedy and redress to which Grandy & Sons were to be entitled in the event referred to ; and
3d, What were the precise premises understood and agreed by the parties to be leased by them respectively, both under the lease to Howell and the lease to Grandy & Sons?
But the court overruled the said motion, and refused *120 to hear the said evidence; to which decision of the court the plaintiff excepted. And, the court being of opinion, upon all the evidence in the case, that Grandy & Sons had been evicted by the plaintiff from a part of the leased premises, rendered judgment for the defendants; to which also the plaintiff excepted. And this is the judgment to which the supersedeas was awarded, which is the case we now have to dispose of.
The following principles of law in regard to the eviction of a tenant from the demised premises, or a part thereof, are laid down in Taylor’s Landlord and Tenant, § 378: “The quiet enjoyment of the premises, without any molestation on the part of the landlord, is an implied condition, on which the tenant is bound to pay rent.” “If, therefore, the tenant be at any time deprived of the premises by the landlord’s agency, the obligation to pay rent ceases, because his obligation has force only from the consideration which is the enjoyment of the premises. From this principle it also follows, that if the land be recovered by a third person, by a title superior to that of the lessor, the tenant is discharged from the payment of rent, after eviction by such recovery. If part only of the land is recovered, such an eviction is a discharge of so much of the rent as is in proportion to the value of the land evicted. But if the lessor himself wrongfully deprives the tenant of the whole or any part of the premises, the tenant is discharged from the payment of the whole rent until the possession is restored. And the reason why there should be no apportionment of the rent in the latter case is, that it is done by the wrongful act of the landlord himself, and no man should be encouraged to disturb a tenant in the possession of that which, by the policy of the feudal law, he ought to protect and defend.” These principles, which seem to have had their origin, in part at least, in the feudal law, are well settled, not only in England, but in many, if not most, of the states of this TJnion, and have certainly *121 received the emphatic sanction of this court in Briggs v. Hall, 4 Leigh, 484. Without making inquiry, therefore, into the reason on which they are founded, or as to the justness of their operation, we will proceed to the more pertinent inquiry, do they apply to this case; and if so, to what extent? Upon the result of that inquiry depends the decision of the case.
It is not pretended that the lessees, C. W. Grandy & Sons, did not possess, use and enjoy the warehouse leased to them during the whole year 1868, for which it was leased; nor that they did not possess, use and enjoy, ■during the same period, that part of the wharf which was opposite the warehouse, being nearly one-half of the wharf; nor that they did not possess, use and enjoy, to some extent, at least for some portion of that period, that portion of the wharf which was opposite the lumber yard and sheds adjoining the warehouse, and leased to Murdock Howell. The only, complaint is, that they were prevented, by the use made of the latter portion of said wharf by Howell, according to his rights under the lease to him, from using and enjoying that portion of the wharf as fully as was stipulated for in the lease to them. For this alleged disturbance in the enjoyment of their rights, they claim to be discharged from all liability for any rent, and the court below sustained their claim, and rendered judgment for the defendants. Is that judgment right or wrong?
Whether it be so or not, depends upon: Firstly, Whether that part of the wharf in front of the lumber yard was a part of the premises demised to C. W. Grandy & Sons, at least to the extent to which it was claimed by them; and if so, Secondly, Whether they were evicted of that part by the plaintiff, or through her agency, or were so disturbed, by the same means, in their enjoyment of the said part, as to be entitled to be discharged from the payment of any rent.
Before entering upon the consideration of these two *122 inquiries, it may be proper to make one or two preliminary remarks. It appears from the record that the plaintiff or her agent, Henry M. Bowden, in making the lease to C. W. Grandy & Sons were guilty of no fraud, misrepresentation, nor concealment, but acted in perfectly good faith. It is true the witness Grandy, one of the firm of C. W. Grandy & Sons, says, “they did not know of the provisions of the plaintiff’s lease to M. Howellbut certainly they might have known of them if they had chosen to make inquiry ; and the presumption is, they would have made' inquiry if they had desired to know anything more than they did on that subject. They might have made inquiry of the plaintiff" or her agent, who would, undoubtedly, have shown them the lease, or a duplicate of it, or fully informed them of its contents. Or they might have made inquiry of Howell, and gotten .from him the same information. These sources of full and accurate information were just at hand ; and yet it is not pretended that Grandy & Sons resorted to either of them, or made any inquiry on the subject, of any person. ' They chose to remain satisfied with the information which their lease gave, and which they already otherwise possessed. They had, it seems, the preceding year, occupied a warehouse adjoining the warehouse leased to them by the plaintiff for the year 1868 ; and during that same preceding year, Howell had occupied the lumber yard under his lease from the plaintiff, and used that part of the wharf opposite the lumber yard, in the same way in which he continued to use it during the year 1868. Grandy & Sons must have seen and known how he was using the wharf when they took their lease, which recognized his right to use it to some extent; and yet they asked for no further information, which could, as we have seen, have been so readily obtained ; but accepted their lease, entered into possession of the warehouse, and that part of the wharf opposite thereto, and enjoyed the same without interruption for *123 three-quarters of a year, without paying any rent therefor ; and when rent is claimed of them by the plaintiff, they get rid of the claim altogether, (so far as the judgment of the court below can rid them of it,) upon the alleged ground that they were not permitted, by reason of the lease to Howell, to use and enjoy that portion of the wharf opposite the lumber yard leased to him, as fully as they were entitled to do according to the terms of the lease to them.
Ve will now proceed to consider the two inquiries aforesaid-; and First, Whether that part of the wharf in front of the lumber yard was a part of the premises demised to O. W. Grandy & Sons, at least to the extent to which it was claimed by them ?
By reference to the lease to them, it will be seen, that the first part of it is a perfect lease of “ the warehouse situated on Tunis’ wharf,” &c., “together with the appurtenances thereto belonging ; to have and to hold the said warehouse and appurtenances thereto for the year 1868,” for the sum of $1,525, payable in quarterly instalments, &c. How, certainly, neither the wharf nor any part of it, nor any interest in it, is embraced in that part of the lease, unless it be embraced in the word “ appurtenances;” and we do not think it is so embraced. The “warehouse” demised is described as being “ on Tunis’ wharf,” which seems to exclude' the idea that Tunis’ wharf itself was considered as a part of the subject conveyed. “The appurtenances” referred to are expressly described as appurtenances to the warehouse ; and we cannot suppose that the word was .intended to embrace so substantial a subject as the wharf, which the witness Grandy says was worth much more, even in the way of tolls, over and above the use of it by Grandy & SonB in their own business, than all the other property together. But this construction is rendered perfectly certain when we look to the. latter clause of the lease, which refers expressly to the wharf, and defines *124 the interest which the lessees were to have therein. After concluding the granting part, the lease proceeds, in a separate and distinct clause, to set out the understanding of the parties as to what the lease does and does not include, and to state the interest the lessees are to have in the wharf. Thus : “ It is farther agreed and understood between the parties to this indenture, that the property herein rented does not include the lumber yard or the brick office, but only includes the warehouse and old wood shed, now standing in rear of the warehouse, on a line with the street, and which the said C. W. Grandy & Sons wish to use as a stable, or whatever else they may see fit.” Then comes, in the same clause, what relates to the wharf, in these words : “ The said O. W. Grandy & Sons are to have the entire privilege and control of the entire wharf to said warehouse and lumber yard, which wharf runs from lumber yard now occupied by Santos & Brother to warehouse now occupied by C. W. Grandy & Sons, except that the party or parties who may occupy lumber yard and sheds shall have permission to use the wharf in front of lumber yard in carrying on their business, in landing and loading ivith lumber, fc.; but on no account shall the party or parties occupying lumber yard and sheds be allowed to let anything whatever remain on the wharf; but it is to be taken away as soon as put upon it, otherwise 0. W. Grandy Sons will charge the usual wharfage on all such merchandise, lumber, &c.”
It is argued, with great ingenuity, by the learned counsel for the defendants, that “although the usual words of a demise are, ‘demise, lease, and to farm-let,’ yet any other words which are sufficient to explain the intent of the parties, that the one shall divest himself of the possession, and the other come into it for a determinate time, whether such words run in the form of a license, covenant, or agreement, are of themselves sufficient, and will, in construction of law, amount to a lease *125 for years as effectually as if the more proper and pertinent words had been used for the purpose.” “Thereforethe words ‘the said C. W. Grandy & Sons are to have the entire [privilege and control of the entire] wharf,’ may very properly be held to be just as effectual as if they were ‘ demise, lease, and to farm-let to the said O. W. Grandy & Sons the said wharf.’” How, undoubtedly, if the words used sufficiently express the meaning of the parties, effect will be given to their intention just as much as if it were ever so technically expressed; and if there had been no lease of the warehouse and appurtenances, but a mere lease of the wharf, the intention would no doubt have been sufficiently expressed by the words, “are to have the entire privilege and control of the entire wharf,” &c. But there being a distinct and separate lease of the warehouse and appurtenances by formal words in the first part of the indenture, the fair presumption is, that if the wharf had been intended to be a part of the demised premises, it would have been expressly embraced in the first part in connection with the warehouse. Instead of that, we find it embraced in a separate and subsequent part of the indenture, and expressed in language more appropriate to a case of privilege, license, or covenant, than to a demise. It is reasonable to presume, therefore, that as to the wharf it was intended by the parties to be made a subject of covenant, and not of demise. Ho doubt, if Howell had had no interest in the wharf, or any part of it, it would have been made a subject of express demise to Grandy & Sons. But as he had an interest in part of it, and the whole wharf could not be put in the exclusive possession of Grandy & Sons, it was deemed best-to make it a subject of covenant only in the lease to them. Even if there was a demise to them of that part of the wharf which was in front of the warehouse, there was none of that part which was in front of the lumber yard in which Howell, had an interest under the lease to him ; and certainly *126 there was none in regard to that interest, whatever it might be. In regard to that interest, the plain intention of the parties was to make it a subject, not of demise, but of covenant only, if anything. The intention' was that Grandy & Sons should “have the entire privilege and control of the entire wharf,” subject only to Howell’s interest therein under the lease to him, but should in no degree encroach upon that interest. The lessor construed that interest to be merely the right to use the wharf in front of the lumber yard in carrying on his business in landing and loading with lumber, and not to let anything whatever remain on the wharf as aplace of storage. 13ut she did not mean even to covenant with Grandy & Sons that Howell should not use the wharf as a place of storage. All she meant to do in that regard was, to place Grandy & Sons in her shoes, and to give the right, which she would or might have had but for the lease to them, to charge the usual wharfage on all such merchandise, lumber, &c., as might be allowed by Howell, or his assigns, to remain on the wharf as a place of storage. This is the plain import of the words used: “On no account shall the party or parties occupying lumber yard and sheds be allowed to let anything whatever remain on the wharf, but it is to be taken away as soon as put- upon it, otherwise”—not that the lessor will pay to the lessees all damages arising therefrom, but that—“ C. W. Grandy & Sons will charge the usual wharfage on all such merchandise, lumber, &c.” How, this looks much more like a covenant by Grandy & Sons with Mrs. Tunis, that they would charge the usual wharfage in all such cases, than, a covenant by her with them that she would pay damages as aforesaid. It was no doubt her interest that the whai’f should not be made a place of storage, but-should be used only as a wharf; and therefore, having transferred her control over the subject for a year to Grandy & Sons, she stipulated with them that they would charge the usual wharfage on all such merchandise, *127 lumber, &c., as might be permitted to remain on the wharf as aforesaid. But even if she intended to covenant with them that such things should not be permitted to remain on the wharf, that would not of itself make the wharf a part of the demised premises.
But suppose we consider the latter clause of the indenture as part of the demise to Grandy & Sons, and the interest in the wharf thereby intended to be vested in them as part of the demised premises, is there anything in that demise inconsistent with the lease to Howell? Is any part of the interest previously leased to Howell embraced in the demise to Grandy & Sons ? We have put in italics the words in the lease to them which express the exception of the interest of Howell in the wharf. Those words are, “ except that the party or parties who may occupy lumber yard and sheds shall have permission to use the wharf in front of lumber yard in carrying on their business, in landing and loading with lumber, &e.” That is all. How let us look to the lease to Howell, and see what interest it gives to him in the wharf, and in what words such interest is described. It leases to him the lumber yard, “together with the use of the wharf in front of the said lumber yard, for the purposes required for his carryiug on the lumber business, &c.” Here we have almost the same language in the two leases in reference to the interest of Howell in the wharf. There is no substantial difference between them in this respect. But to make the matter certain, the lease to Howell, after describing the interest he was to have in the wharf, proceeds thus: “But the said Murdoch Howell is not to have the privilege of collecting wharfage, either on vessels or goods landing or shipping for other parties; ” thus showing that Howell was only to use the wharf in front of the lumber yard in carrying on his business in landing and loading with lumber, &c., and that for all other purposes the wharf was to belong to, and be used by, the lessor and her assigns, who might *128 charge the usual wharfage to all other persons and for all other purposes. It was not intended that Howell should use the wharf as a place of storage, which would prevent its being used by the lessor or her assigns as aforesaid, or impair such right of user. There was no necessity for its being so used by Howell. He bad a lumber yard in thirty feet of the water, more than capacious enough for the storage of all his lumber, &c. It could not have-been very inconvenient to have stored his lumber in that yard instead of on the wharf. Of course it was more convenient, and less expensive, to let it remain, occasionally, on the wharf; but that would have been a perversion of the wharf from the peculiar purposes for which it was designed, and a violation of the rights expressly reserved to the lessor in the lease.
If, under peculiar circumstances, it should be desired, by Howell at any time to store lumber on the wharf for a short period, he could do so by paying wharfage on that account. If “ in carrying on his business, in landing and loading with lumber, &c.,” it was necessary for him to use the wharf as he did, according to his own testimony, if not that of Grandy also, then, the lease to Grandy &■ Sons reserved to him the right to do so, and they had full notice of his right, and saw how he was using thewbarf when they received their lease.
How, whatever may have been the rights of the lessor, and the rights and obligations of the lessee in the lease to Howell in this respect, it was intended in the lease-to Grandy & Sons to place them in the shoes of the lessor in regard to the wharf. We may, therefore, fairly conclude that the interest to which Howell was entitled in the wharf, whatever it may have been, was not, in-whole or in part, included in or interfered with by the lease to Grandy & Sons, and that the first inquiry we have just been considering, “ whether that part of the wharf in front of the lumber yard was a part of the premises demised to them, at least to the extent to which it was. *129 claimed by them,” must be answered in the negative ; and if so, that is an end of the case. But suppose it ought to be answered in the affirmative ; then let us inquire,
Secondly, Whether they were evicted of that part of the wharf by the plaintiff, or through her agency, or were so disturbed, by the same means, in their enjoyment of the said part as to be entitled to be discharged from the payment of any rent ?
Certainly, if the plaintiff intended, at most, to make a covenant only with Grandy & Sons, in regard to the extent to which the wharf might be used by Howell, then, a breach of that covenant, supposing it to have been broken, would not amount to an eviction, as is shown by the case of Etheridge v. Osborn, 12 Wend. R. 529, cited by the counsel for the plaintiff. In that case it was held by the Supreme Court of New York, Savage, Chief Justice, delivering the opinion of the court, that the failure of a lessor to perform certain covenants contained in the lease, which if performed would render the demised premises more valuable, is no bar to the lessor’s claim for rent; the remedy for the lessee is, by action to recover damages for the breach of the covenants.
But whatever may have been the interest in the wharf vested by the lease in Grandy & Sons, were they evicted of that interest, or any part of it, during the term by the plaintiff, or through her agency ? There must be an eviction in such a case to discharge the tenant from his liability for the payment of rent. But what is an eviction, within the meaning of the principle, is a question which has been the subject of much contrariety of opinion and decision. Formerly, it was considered that there must be a disseisin, or tortious entry, to constitute an eviction in such a case. Gilbert on Rents, p. 178. Sergeant Williams says, that to occasion a suspension of the rent, the plea must state an eviction or expulsion of the lessee by the lessor, and a keeping him *130 out of possession until after the rent became due ; otherwise it will be bad. Salmon v. Smith, 1 Wms. Saund. 204, and note (2). In Pendleton v. Dyett, 4 Cow. R. 581, it was held by the Supreme Court of blew York, Sutherland, judge, delivering the opinion of the court, that to sustain a plea of eviction in bar of an action for rent, the tenant must show an actual expulsion before, and that it continued till after, the rent was due. In later times, a tortious entry, or actual expulsion, has not been considered necessary to constitute an eviction. In Upton v. Townsend and Upton v. Greenlees, 17 C. B. 30, 84 Eng. C. L. R., cited by the counsel for the defendants in error, the court had great difficulty in determining what an eviction is, in the meaning of the rule. But the court held that alterations made with the consent of the lessor on the subject matter of the demise, so as materially to change the character of the premises, amounted to an eviction, in the meaning of the rule. Jervis, Chief Justice, said : “It is extremely difficult at the present day to define with technical accuracy what is an eviction. Latterly, the word has been used to denote that which formerly it was not intended to express. In the language of pleading, the party evicted was said to be expelled, amoved, and put out. The word eviction—from evincere, to evict, to dispossess by a judicial course—was formerly used to denote an expulsion by the assertion of a title paramount, and by process of law. But that sort of eviction is not necessary to constitute a suspension of the rent; because it is now well settled, that if the tenant loses the benefit of the enjoyment of any portion of the demised premises by the act of the landlord, the rent is thereby suspended. The term ‘eviction’ is now popularly applied to every class of expulsion or amotion. Getting rid thus of the old notion of eviction, I think it may now be taken to mean this: not a mere trespass and nothing more, but something of a grave and per *131 snanent character done by the landlord, with the intention of depriving the tenant of the enjoyment of the demised premises.” This case was decided in 1855. In Dyett v. Pendleton, 8 Cow. R. 727, it was held by the Court of Errors of New York, reversing the decision of the Supreme court of that State in Pendleton v. Dyett, cited supra, that where the lessor was guilty of habitually bringing lewd■ women under thejsame roof with the demised premises, though in an apartment not demised, by which nocturnal noise and disturbance were made, and in consequence the lessee quitted the premises, and remained away with his family; this was evidence to go to the jury, under a plea of eviction by the landlord, in answer to a declaration for the rent; and that the jury might, upon such evidence, find the plea true; and the lessor would thereby be barred of his rent, the same as on an actual or physical entry and expulsion of the tenant, and that the usual plea in bar, of entry and eviction, would be sustained by such evidence. This case seems to have carried the law of constructive eviction to its utmost verge.
It is well settled that a mere trespass, however aggravated, does not amount to an eviction. And where a part of the demised premises is recovered by a person claiming under a prior lease from the landlord, it seems that the eviction in such case is by title paramount, so as to be ground for an apportionment of the rent, and not for its entire forfeiture. Neale v. Mackenzie, 2 Cromp. Mees. & Ros. Exch. R. p. 84. The judgment ■in that case, to be sure, was reversed by the Court of Exchequer Chamber, 1 Mees. & Welsh, 746. But that court did not differ from the Court of Exchequer in the same case, upon the question, whether an eviction in such a case would be an eviction by title paramount, but reversed the judgment of the latter court upon the .ground that the lessor, at the time of the execution of ■the second lease, was not in possession of a part of the *132 demised premises which was included in the prior lease ; and, therefore, the latter demise was wholly void as to such part, and the rent was not apportionable, and the lessor was not entitled to distrain for the whole rent, or any part of it. "When it was argued in the Court of Exchequer Chamber that the lessee is evicted in the meaning of the rule, whenever, by any act of the lessor, he is deprived of his title to the land, Lord Denman, Chief Justice, inquired • “How can he be evicted from that which he never had? He must be evicted from his possession.” The case of Lawrence v. French, 25 Wend. R. 443, cited and relied on by the counsel of the defendants, may be sustained on the same ground on which the case of Neale v. Mackenzie was decided by the Court of Exchequer Chamber. In the former case, as in the latter, the tenant was prevented from obtaining the whole of the premises by a person holding a part under a prior lease executed by the landlord; and it was held that the landlord had no right to distrain for a proportionate part of the rent reserved; though the court thought that the worth of the premises actually enjoyed by the tenant could be i’ecovered in an action for use and occupation. This distinction, then, seems to exist in cases in which the lessor Las made a prior lease of part of the demised premises; where the latter lessee doeB not receive possession of such part of the premises, because of the adversary possession thereof by the former lessee, then the second lease, as to such part, is void, and the lessor cannot distrain for a proportion of the rent, though he may recover the fair value of the balance of the premises, in an action for use and occupation. But where the second lessee receives possession under the lease to him of the whole demised premises, and a part thereof is afterwards recovered of him by the first lessee, or his assigns, it will be considered as recovered under title paramount, and the rent will be apportioned, and the portion due for the balance of the premises re *133 maining in the occupancy of the second lessee may be distrained for.
If the case now under consideration were one of the cases above mentioned, it would fall under the second of the said two categories; as Grandy & Sons received possession of the whole wharf under the lease to them, subject to the exception made in that lease, of the right of Howell to use that part of the wharf in front of the lumber yard, in carrying on his business in landing and loading with lumber, &c. So that if Grandy & Sons abandoned the use of that part of the wharf after the 1st of April 1868, in consequence of the use of it by Howell under the lease to him, and such abandonment can be considered as equivalent to an eviction, then it was an eviction by title paramount, and the rent was apportionable.
But such an abandonment cannot amount to an eviction, whatever may have been the extent of Howell’s right to the use of the wharf under the lease to him, and however that right may have conflicted with the right of Grandy & Sons to the use of the wharf under the lease to them. We have been referred to no case, and we have found none, which affords the slightest warrant for saying that such a state of facts would amount to an eviction. The terms of the lease to Grandy & Sons plainly show that it was not intended to confer on them the right to abandon at pleasure the use of that part of the wharf in which Howell had an interest, and thus get rid of the payment of the whole rent of the entire property. Whatever their rights and remedies may ¡have been, they certainly were not authorized by law to perpetrate so great an injustice. By the express terms of the two leases, Howell and Grandy & Sons were each to have the right to use the wharf in front of the lumber yard, Howell to a limited, though indefinite extent, and Grandy & Sons to the entire use of it, subject to Howell’s right. In this state of things it was to be expected that *134 there might he some conflict between them ; and such conflict was accordingly provided for in the lease to Grandy & Sons, who were to look to Howell for compensation if he transcended his rights and encroached on theirs. Grandy & Sons have no pretext even for an apportionment of the rent for the first quarter. Until April, at least, they had possession of the wharf, received wharfage, and made no complaint of any interference with their rights. Upon every principle, therefore, they were bound for the rent of that quarter. If what occurred afterwards amounted to' a constructive eviction of their interest in the wharf in front of the lumber yard, it was cause only for an apportionment of the rent for the residue of the term, and not for its total forfeiture. But even if they had a right, at their election, to make the alleged interference with their rights by Howell a cause for withdrawing from the use of that part of the wharf, and thus to produce a constructive eviction of it, surely they ought to have given very distinct notice of their intention to do so to the plaintiff, and released to her their interest in that part of the wharf, in order that she might indemnify herself by restricting Howell to his rights, and by making the best use she could of the wharf, subject to those rights. Instead of that, they made no demand of Howell for wharfage until sometime in April 1868 ; and when he refused to pay the demand, they took no legal step to compel him to do so, but went to the house of the plaintiff to see her on the subject, but did not get an interview with her. It does not appear that they ever after obtained or sought an interview with her, or gave her notice, in any way, of their intention to abandon altogether the use of that part of the wharf, and claim an apportionment of the rent on account thereof, much less an-entire forfeiture of the whole rent. Under these circumstances, it surely cannot be said that there was any eviction, actual or constructive.
*135 Iii every view of the case, therefore, and without considering the question raised by the second bill of exceptions, we are of opinion that the judgment of the court below is erroneous, and are for reversing it, and rendering judgment in favor of the plaintiff.
The judgment was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said judgment is erroneous. Therefore, it is considered that the same be reversed and annulled, and that the plaintiff recover against the defendants her costs by her expended in the prosecution of her writ of supersedeas aforesaid here. And this court proceeding to give such judgment as the said court of the corporation of the city of Norfolk ought to have given, it is further considered that the plaintiff recover against the defendant two thousand three hundred and sixty-three dollars and eighteen cents, the penalty of the said bond, and her costs by her in the said court of the corporation aforesaid expended. But this judgment is to be discharged by the payment of one thousand one hundred and eighty-one dollars and fifty-nine cents, with interest thereon, to be computed after the rate of six per centum per annum, from the 2nd day of October 1868, till payment, and the costs. Which is ordered to be certified to the said court of the corporation of the city of Uorfolk.
Judgment reversed.