Boynton, J.
Assuming, without deciding, that the :acts under which it is contended the canal basin was filled up and destroyed by the city of Hamilton, are not in conflict with the constitution, this being the more favorable view to be taken for the defendants in error, and granting .that the eviction of the tenant by the landlord from any *662 material portion of the demised premises suspends or bars-the latter’s right to the rent during the continuance of the eviction, Hodgkins v. Robson, 1 Vent. 276; Colburn v. Robson, 117 Mass. 262, the facts, in our judgment, fail to establish an eviction by the state, and hence are insufficient to constitute a defense to the action. The only consent given by the state to the eviction, consisted in the passage bjl the legislature of the three acts referred to in the answer, under and by virtue of which it is alleged said basin was destroyed. In reply to the allegations of the answer* connecting the state with the wrongful eviction, the plaintiffs denied that any action whatever was ever taken by the-city of Hamilton under the acts of 1877, or that the state-ever ejected, expelled, or put out said lessee from said canal basin, or any part of the public works, or that it ever did anything whatever in that behalf. These denials were sufficient to put the defendants upon proof of the allegations-of the answer involving the state in the alleged wrongful eviction.
The only evidence adduced to show the execution and delivery of a bond by the city, indemnifying the state-against liability or loss resulting from the destruction of the basin, was drawn out on the cross-examination of the-witness Owen. He stated, in answer to the inquiry whether the city “had not given a bond in the sum of fifty thousand dollars to the state,” that he so understood; and in answer to the further question, whether there “ was not a feeling that the city might become liable to the state in that amount,” said, “ Well, my friend Parrott, there, says-there is no liability.” These two answers comprised the entire testimony that was offered on the subject of the execution and delivery of the bond which the city was required to give to the state, and these answers were given to inquiries which were a part of a series put to the witness to elicit evidence showing his interest in the result of the action, for the purpose of affecting his credibility. The-evidence was wholly insufficient to establish the fact that such bond was given, or to warrant the court in accepting- *663 the fact as established. The matter was susceptible of direct proof easily attained, and if the execution and delivery of the bond were essential to the right to maintain the defense interposed, the fact ought to have been established by testimony less uncertain and less open to doubt. The question, then, arises at the outset, whether the city of Hamilton, in view of the circumstances existing at the time the basin was destroyed, was entitled to exercise the power that the legislation referred to, was designed to confer ?
It is very manifest that the provisions of the act of 1876, and of the act of 1877, requiring the city to execute and deposit with the governor a bond indemnifying the state against all liability or loss growing out of the action of the city in filling up the basin, were intended as a substitute for the provisions of the original act requiring the written consent of the lessees, and their release of the state from all liability resulting from the filling. The consent and release provided for, were clearly conditions precedent to the city’s right to exercise the power that the act of 1872 was designed to confer; and until they were secured, the city had no right to act under the statute. And when it was 'found that the lessees would neither give consent, nor release their claim for damages for the destruction of that portion of the canal covered by the basin, and the bond required by the act of 1876, as also by the supplementary act of 1877, was substituted for such consent and release, the execution and delivery of the bond were as fully a condition prerequisite to the city’s right to exercise the power conferred by the latter acts, as were the consent and release, under the act of 1872.
It is very true that the statute does not in terms provide that the deposit of such bond with the governor shall precede the exercise by the city of the authority to fill up the basin. But a careful consideration of the provisions of the three acts, and of their subject-matter, in the light of tbe admitted and well-understood business relations between the state and the lessees of the public works, satisfies us that tbe deposit of sucb bond with the governor was clearly *664 intended as a condition, upon the performance of which the city’s right to fill up said basin was made to depend. Before the passage of either of the acts requiring the bond to be given, the lessees had refused their assent to the filling up of the basin, and to release to the state their claim for damages, in the event their rights under the lease were Interfered with. These facts were well known to the legislature, as appears from the recitals of the act of 1876. It was very apparent that litigation would result from any interference with the right of the lessees to this portion of the public woi’ks.
Hence, it was provided, in both the act of 1876 and the act of 1877, that whenever it was determined to fill up said basin, the decision of the council should be communicated to the governor, and a bond given fully indemnifying the state from all loss or damage to result therefrom. It was the plain import of this language, that the city might proceed to fill up the basin, upon the execution and delivery of said bond; and until such bond was accordingly given, the right to destroy the basin did not exist, and the action of the city causing such destruction was wholly unauthorized.
Erom the position taken in the argument, that the state Is answerable as an aider and abettor of the unlawful act of the city in causing the eviction, although the statute was not complied with, we wholly dissent. The legislature can bind the state only in the mode and by the adoption of the forms and methods prescribed by the constitution. It speaks through a legislative act. And where the act is designed to confer power, and, either expressly or by fair implication, makes its exercise depend upon the performance of a condition precedent, such condition must be performed before the right to exercise the power attaches. The right of the defendants to hold the state accountable for the action of the city in filling up the basin depends on the authority acquired by the city as between the city and the state. Unless the city is in a position to justify its act, through compliance with the terms and conditions of the *665 statute, in a controversy between it and the state, the state •can not be held liable for the city’s act.
Suppose the state should bring an action against the city for an injury to its rights as lessor of the public works, or owner of the reversion, will it be pretended that the city could justify its action, under the acts-aforesaid, in the face ■of its omission to give the bond required by them ? And if the city could not successfully defend, how can it be made to appear that the state is liable to the defendants for "the city’s doings, when to effect such liability it must appear that the state authorized the city’s act.
In our opinion, the execution and delivery of the bond required by the statute were a condition, without the performance of which no authority was vested in the city to ■fill up said basin; and as it did not sufficiently appear to have been given, the motion for a new trial should have been granted.
Judgment reversed and cause remanded for a new trial.
Oket, J.
I understand the reversal of the judgment below to be placed on the ground that it does not appear that the bonds, required by the city of Hamilton under the acts in question, were in fact given. The attorney-general distinctly admitted that it was wholly immaterial whether they had been given or not; and that was the only allusion made to the matter in the argument on either side. I do not doubt the right, much less the power, of the court to place its decision on any ground thought to be embraced by the record; but, in my opinion, it is clear that the learned judge of the superior court (Haines, J.) committed no error in that or any other particular.
1. It was never contemplated by the general assembly, in passing the act of 1876 or that of 1877, that giving bond by the city of Hamilton should be a condition precedent to the lawful destruction of the basin. What is, or is not, a condition precedent depends, not on merely technical words, but on the plain intention of the legislature to be deduced from the whole statute. That giving such bond is not in terms made such condition is manifest, nor does any fair *666 construction of the language require it, nor is there anything in the record to justify the belief that such was the-intention. Assuming the validity of those acts, a bond of the city, without surety, was all that could have been required. As the liability was, even by the terms of the acts, the same without as with such bond, the state might well, have waived the bond, or might have enforced the obligation, after the basin was destroyed, to the same extent without as with a bond. ®
2. Reference is made in the answer to the several acts of' 1872, 1876, and 1877, and then follows this allegation r “And defendants say, that under and. by virtue of and in pursuance of said acts of the general assembly, the city council of said city of Hamilton, on or about the night of' the 19th of June, 1877, cut off, by a dam, said side-cut from the Miami and Erie canal, and shortly thereafter filled up- and destroyed the same.”
This is certainly a statement that the city complied with the act of 1876, and there is no reply to that part of the-answer. If the city complied with the act of 1876, it is quite immaterial whether any steps were taken under the-act of 1877, for the act of 1876 made ample provision for filling up a material part of the basin, and for a bond to* the state. True, the allegation is somewhat indefinite, and,, if a motion had been made for the purpose, the court might have required the defendant to make the pleading certain,, by setting forth the steps taken by the city; but no such motion was made. It is clear that the averment is sufficient on demurrer. Chamberlain v. Painesville, etc., R. Co., 15 Ohio St. 225. There being no denial of the allegation “that, in what was done by the city, it had proceeded under the act of 1876, it is to be taken as true (75 Ohio L. 622); and hence, the supposed defect in the record does not exist.
3. The bond was given ; and this distinctly appears in the record. At a meeting of the council of Hamilton, held April 24, 1876, the president of the council and city clerk, were required to execute to the state the bond of the-city, as provided for in the act of 1876. The defendants,. *667 on June 23,1877, made official communication to Governor Yonng that the authorities of the city of Hamilton were-proceeding, under the ácts hereinbefore mentioned, to draw the water from the basin, preparatory to filling it up, and that if this was accomplished, they would pay no more rent, but, on December 1, 1877, abandon the public works. That officer, with such notice, would not have failed to enforce the execution of the bond, if it had not been already executed.
But, to put the matter at rest, it appears that, on the-trial of the case, evidence on the subject was offered. In the cross-examination of Owens, a witness for the plaintiff,, occurs the following: “ Q. Did you come here for the purpose of representing the interests of Hamilton? A. Well,, I came here, with others, to defend the city of Hamilton,, to be honest with you. Q. Hamilton gave a bond for $50,-000 to the state in this matter, didn’t it? A. Yes, so I understand. Q. Is n’t there a feeling that Hamilton may become liable to the state in that amount? A. Well, my friend Parrott there (one of the defendants) says there is no liability. Q. Is not that what the people down there think?” Objection being made by the counsel for the state the question was not answered.
This; surely, afforded prima fade evidence that the statutory provision in that particular had been complied with,, and no objection having been made at any time to the sufficiency of the evidence, and nothing in opposition to it appearing in any part of the record, it must be taken as true-—the record containing all the evidence offered on the trial..
4. In presenting what I believe to be the correct view of this case, I will state a final reason why it is immaterial whether or not the bond was given under either act.'
The State of Ohio is the owner of the Miami and Erie canal and other public works. On June 1, 1871, the defendant became the lessees of the state as to all of them, for the term of ten years, at a gross sum to be paid per year, in semi-annual installments. By the terms of the lease, the lessees were required, inter alia, to give a bond to- *668 ;secure tbe payment of the rent, and renew it every two years. On June 1, 1877, they paid the rent for six months in advance, and renewed the bond, in compliance with those terms. They were then in peaceable possession of the property, under a covenant in the lease for quiet enjoyment. A valuable and material part of the property so leased was the basin in the city of Hamilton, being part of the Miami .and Erie canal.
Notwithstanding the state, on June 1, 1871, guaranteed to the lessees peaceable possession of the whole property leased, during the term of ten years, the general assembly thereafter passed a series of acts authorizing the destruction of the above mentioned basin. The first of these acts, passed April 27, 1872 (69 Ohio L. 271), granted authority to the city of Hamilton, to fill up a material portion of the basin; but the consent of the lessees was essential to the •exercise of the power, and that was never obtained. Still, the city council, on May 3, 1875, passed a resolution declaring that the basin was dangerous to life and health, .and that it had been condemned by the board of health of that city as a nuisance; and a vote of the citizens of the city was taken, May 18, 1875, which resulted in a majority in favor of filling up the basin. No attempt, however, was made to fill it up at that time; and it is plain that nothing <of the sort could have been done; for a public work of that character, constructed and owned by the state, could not, in contemplation of law, become a nuisance in the hands of the lessees. Com. v. Reed, 34 Pa. St. 275 ; Field on Corp. 677.
The supplementary act of April 6,1876 (73 OhioL. 275), authorized the city to fill up that portion of the basin mentioned in the act of 1872 (69 Ohio L. 271), without obtaining the consent of the lessees; and the act of April 24, 1877 (74 Ohio L. 467), which was actually passed April 20, 1877, authorized the filling up of additional portions of the ■basin, without such consent.
Under these acts, the council passed either ordinances or (resolutions on April 24, October 30, and November 6,1876, *669 and January 15, April 23, June 13, and June, 18, 1877, with express reference to the destruction of the basin, and authorizing such destruction in terms; and, accordingly, the basin was destroyed.
There is no pretense of malice on the part of the citizens or officers of the city of Hamilton. They thought the basin interfered with their prosperity, and it is not strange that they desired to get rid of it. They believed the statutes in question authorized them to destroy it. Indeed, it is impossible to read the record without reaching-the conclusion that the basin would not have been destroyed if the acts in question had not been passed. The woi’k of destruction was not that of an irresponsible mob, but of the members of council and other officers of the city, who-assumed to act under authority of these statutes.
Of course, the state could transfer the reversion in the-basin to the city of Hamilton, and perhaps the acts in question were valid for such purpose; but the lessees were entitled to remain in quiet enjoyment of the basin until June-1, 1881, and hence the state could only authorize the destruction of it under the right of eminent domain. Where,, in the exercise of that right, a lessee is evicted from a portion of his premises, no defense will, ordinarily, be thereby afforded to him against an action on the lease for rent. Frost v. Earnest, 4 Whart. 86; Mills on Em. Dom., ch. 5. But here the state is the lessor, and if, under its authority,, its lessees are evicted from part of the premises, the consequences will be the same as if the act had been that of a private lessor. That the legislature may even commit individual wrongs is certain; though, neither fraud nor malice can be imputed to the general assembly; nor can an action be maintained against the state without its consent. Cooley on Torts, 123, 616, 689. But that difficulty is removed when the state becomes the actor. Then there is not one law for the state and another for the citizen. Where-a grant is made by the state to an individual, for a valuable consideration, “ the rule of construction between the-government and the subject is the same as between private- *670 grantors and grantees” (3 Wash. R. Prop. 524*); and when, at the suit of the state, courts are called on to determine the rights and obligations of the parties to such grants, the same principles must be applied as if they had been private persons. They stand upon an equality, and the sovereign is merged in the contractor and suitor. In no state has this principle been more distinctly asserted than in Ohio. The State v. The Franklin Bank, 10 Ohio, 9.1; The State v. Buttles, 3 Ohio St. 309, 319; The State v. Ferry, Wright, 662. And see Sinking Fund Com. v. Northern Bank, 1 Met. (Ky.), 174.
The acts of 1876 and 1877 were probably unconstitutional, so far as they attempted to confer authority cm. the ■city of Hamilton to interfere with the estate of the lessees without their consent. The legislature, in the proper ex■ercise of the power of eminent domain, might have authorized the destruction of the basin. This would have afforded a complete answer to any allegations of trespass .against the city, but it would also have furnished a defense to the lessees in an action for rent. It is very doubtful, however, whether there was any proper exercise of that power. First. The authority to destroy the basin was an attempt to clothe Hamilton with corporate power, and the .statutes being local and special, they seem to be in conflict with the constitution. Art. 13, § 1; The State v. Mitchell, 31 Ohio St. 592. Secondly. Neither of the acts contains any statement of a public purpose for which the basin -was to be taken, and private property can not be appropriated to public use without such declaration. Const., •art. 1, § 19; Reeves v. Treas. of Wood Co., 8 Ohio St. 333.
Rut, the state being the lessor, it is wholly immaterial whether the acts were constitutional or unconstitutional, and it is equally immaterial whether or not the authority attempted to be conferred was strictly pursued. Where the tenant is evicted, by the landlord, from part of the premises, the entire rent is thereby suspended, for the landlord “ shall not so apportion his own wrong as to enforce •the tenant to pay anything for the residue.” The evic *671 ¡tion, whether partial or complete, which relieves the lessee from the payment of rent, is in the nature of a tort, and, though committed by another, the landlord must bear the consequences if he authorized the act. The proper inquiry is, “ whether the plaintiff' has, by his conduct, made •himself a party to that which, in point of fact, amounts to .an eviction. . . . The question, therefore, of eviction or no eviction, depends upon the circumstances, and it is, in all eases, to be decided by the jury.” Upton v. Townsend, Upton v. Greenlees, 17 C. B. (84 E. C. L.), 30-64-66; Royce v. Guggenheim, 106 Mass. 201; Fillebrown v. Hoar, 124 Mass. 580; McClurg v. Price, 59 Pa. St. 420; Tunis v. Grandy, 22 Gratt. 109; Hayner v. Smith, 63 Ill. 430.
The question, then, is not whether the statutes were -valid, nor whether they were complied with, but did the legislature, in passing the above-mentioned statutes of 1872, 1876, and 1877, occasion the destruction of the basin or materially contribute thereto ? That the passage of those statutes did so contribute — that this was, indeed, the «efficient cause of the destruction — I entertain no doubt. And the lessees were not bound to enjoin the city or those -attempting the destruction of the basin; nor were they estopped by renewing the bond on June 1, 1877.
In any view of the ease, the judgment below, in my ■opinion, was right; and of the same opinion is Gilmore, C. J. But the majority is of. a different opinion.